# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP EARL CARTER,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>STU SHERMAN,<br><br>　　　　Respondent. | Case No. 1:14-cv-00352-AWI-SAB-HC<br><br>FINDINGS AND RECOMMENDATION REGARDING RESPONDENT'S MOTION TO DISMISS AND PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS<br><br>(ECF Nos. 1 and 10) |

Petitioner is a state prisoner proceeding pro se with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation confined at California Substance Abuse Treatment Facility at Corcoran on a sentence of sixteen years-to life for second degree murder. (Pet. at 1).[1] Petitioner challenges a prison disciplinary hearing held on August 29, 2011, in which he was found guilty of manipulation of staff. (Id.). As a result, he was assessed a thirty (30) day loss of good-time credits. (Id.). During an administrative appeal, C. Tileston, Appeals Examiner, modified the finding when he determined that there was not sufficient evidence to warrant a guilty finding for the offense of Manipulation of Staff, but did find that there was sufficient evidence to determine a finding of guilt for Disobeying a Direct Order. (Pet., Ex. J).

---

[1] Page numbers refer to the ECF page numbers.

1

Petitioner's Minimum Eligible Parole Date (MEPD) was March 12, 2003. (Pet., Ex. L). On October 13, 2011, Petitioner postponed his parole hearing for twelve (12) months. (Pet., Ex. L). On September 26, 2012, at his parole hearing, Petitioner was granted a stipulation of unsuitability for parole for three years. (Opp'n, Ex. C).

# I.

# DISCUSSION

### A. Preliminary Review

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default). Thus, a respondent can file a motion to dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194, n. 12.

In this case, Respondent's motion to dismiss is based on lack of jurisdiction because the challenged disciplinary decision did not affect the fact or duration of Petitioner's custody.

### B. Habeas Corpus Jurisdiction

In general, the Supreme Court has explained that federal habeas jurisdiction lies for claims that go to "the validity of the fact or length of [prison] confinement." See Preiser v. Rodriguez, 411 U.S. 475, 490, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). The Supreme Court last discussed the distinction between habeas corpus and § 1983 in Skinner v. Switzer, 131 S. Ct. 1289 (2011). The Court explained:

> When may a state prisoner, complaining of unconstitutional state action, pursue a civil rights claim under § 1983, and when is habeas corpus the prisoner's sole remedy? This Court has several

2

> times considered that question. Pathmarking here is <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). ... When "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," the Court held, § 1983 is not an available remedy. <u>Ibid.</u> "But if . . . the plaintiff's action, even if successful, will not demonstrate the invalidity of [his conviction or sentence], the [ § 1983] action should be allowed to proceed . . . ." <u>Ibid.</u>

<u>Skinner</u>, 131 S. Ct. at 1298.

Further, the Court used conditional language in describing how in cases that do not "necessarily spell speedier release, however, suit may be brought under § 1983." <u>Skinner</u>, 131 S. Ct. at 1293 (citation omitted).

In <u>Preiser</u>, the Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." <u>Preiser</u>, 411 U.S. at 500. In <u>Wolff v. McDonnell</u>, 418 U.S. 539, 554, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), the Court held that the prisoners could not use § 1983 to obtain restoration of credits because <u>Preiser</u> had held that "an injunction restoring good time improperly taken is foreclosed."

The Ninth Circuit has also wrestled with issues arising out of the interplay between habeas corpus and § 1983 jurisdiction. Ninth Circuit jurisprudence is expressed in three opinions: <u>Bostic v. Carlson</u>, 884 F.2d 1267 (9th Cir. 1989), <u>Ramirez v. Galaza</u>, 334 F.3d 850 (9th Cir. 2003), and <u>Docken v. Chase</u>, 393 F.3d 1024 (9th Cir. 2004).

In <u>Bostic</u>, the Court of Appeals reviewed district court dismissals of a series of habeas petitions filed by a petitioner who in each was challenging disciplinary actions taken against him. 884 F.2d at 1269. Prison officials had assessed a forfeiture of good-time credits for some of the infractions, but the remainder did not carry a loss of time credits - only a term of segregated housing. <u>Id.</u> In each of the petitions, the petitioner sought expungement of the infractions from his disciplinary record. <u>Id.</u> The court "assume[d]" that habeas jurisdictions existed over all the petitions, even those challenging discipline with no attendant credit loss, stating:

> Habeas corpus jurisdiction is available under 28 U.S.C. § 2241 for

3

> a prisoner's claim that he has been denied good time credits without due process of law. [citations] Habeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restriction of his liberty, such as disciplinary segregation, without due process of law. [citations] Habeas corpus jurisdiction also exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole. [McCollum v. Miller, 695 F.2d 1044, 1047 (7th Cir. 1982)].

Id. at 1269 (emphasis added). The court did not elaborate on when expungement would be "likely to accelerate" parole eligibility, or otherwise differentiate between parole eligibility and parole suitability.

In Ramirez, a prisoner brought a civil rights action under § 1983, not a habeas petition, to challenge procedures used in imposing disciplinary sanctions of ten days of disciplinary detention, 60 days loss of privileges and a referral to administrative segregation. 334 F.3d at 852-53. He was not subject to a loss of good time credits. Id. He sought expungement of the disciplinary record from his file and an injunction prohibiting the state from considering it "when they fix plaintiff's terms and decide whether plaintiff should be released on parole." Id. at 859 n. 6. The Court of Appeals held that the favorable termination rule does not apply to prison disciplinary sanctions that do not necessarily affect the fact or length of a prisoner's confinement. Id. at 854-58. The state had failed to show that expungement of the disciplinary finding would necessarily accelerate plaintiff's release because the parole board could still deny parole on the basis of other factors. Id. at 859. ("As Ramirez's suit does not threaten to advance his parole date, his challenge to his disciplinary hearing is properly brought under § 1983.").

The court stated, "Bostic thus holds that the likelihood of the effect on the overall length of the prisoner's sentence from a successful § 1983 action determines the availability of habeas corpus." Id. at 858. From this, the Ninth Circuit reasoned that § 1983 and habeas corpus were mutually exclusive. Importantly, the Ninth Circuit's discussion in Ramirez was focused on the determination of when § 1983 actions were available in light of the favorable termination rule. The court was not focused on the limits to habeas corpus jurisdiction.

In Docken, the petitioner brought a habeas corpus action to challenge the timing of his parole-eligibility reviews. 393 F.3d at 1025-26. In summarizing Supreme Court authority, the

Court of Appeals held that such cases only defined the limitations on § 1983 in light of the exclusive jurisdiction for certain claims only cognizable in habeas. Specifically, the Ninth Circuit stated:

> Thus, although Supreme Court case law makes clear that § 1983 is not available where a prisoner's claim "necessarily" implicates the validity or duration of confinement, it does not set out any mirror-image limitation on habeas jurisdiction. *The Court's central concern, in all of the cases cited above, has been with how far the general remedy provided by § 1983 may go before it intrudes into the more specific realm of habeas, not the other way around.* At the same time, though the Court has so suggested, it has never squarely held that there is an area of overlap between state habeas and § 1983 prisoner suits. Instead, it has policed the distinction between the two remedies solely by defining the limits of § 1983, as in Heck, and by defining those classes of claims that must be brought through habeas, as in Preiser. *Put simply, when the Supreme Court has concerned itself with the interaction between § 1983 and habeas, it has looked in only one direction.*

Docken, 393 F.3d at 1028 (emphasis in original).

Accordingly, the court, citing Bostic, acknowledged, based on its own precedent, that habeas jurisdiction was available in some non "core" circumstances. See Id. at 1028-29 ("In [Bostic], for example, we held that 'habeas corpus jurisdiction... exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole.'"). The Docken Court held that claims "likely" to affect the duration of confinement under Bostic were those "with a sufficient nexus to the length of imprisonment so as to implicate, but not fall squarely within, the 'core' challenges identified by the Preiser Court." Docken, 393 F.3d at 1030.

In this case, in his opposition, Petitioner cites Dunn v. Swarthout, 2013 WL 4654550 (E.D. Cal. August 29, 2013), for the proposition that if the Petitioner lost good time credits as a result of the prison disciplinary conviction, then the disciplinary violation impacts the duration of the prisoner's confinement and is cognizable for habeas corpus review. (Opp'n at 2). However, the Court does not find this district court order persuasive.[2] The Supreme Court noted in dicta in Preiser v. Rodriguez, 411 U.S. at 487-88, that a challenge to a disciplinary conviction that results

---

[2] The court notes that district court decisions do not constitute precedent and are not binding on other district courts. See Gasperini v Center for Humanities, Inc., 518 U.S. 415, 431, 116 S. Ct. 2211, 135 l. Ed. 2d 659 (1996).

5

in the loss of good time credits is permissible if restoration of the good time credits will result in immediate or speedier release from prison. Respondent argues that expungement of the challenged 2011 prison disciplinary violation will not have an effect on Petitioner's release date from prison because he is past his MEPD and his next parole suitability hearing will not be until September 2015. (Motion to Dismiss at 2). As Petitioner is past his MEPD, the mere restoration of good time credits isn't enough to result in immediate or speedier release from prison. The Court must look at whether restoration of good time credits along with the expungement of the disciplinary record is likely to have an effect on the parole board's determination, and therefore, have a sufficient nexus to the length of Petitioner's imprisonment. Docken, 393 F.3d at 1030.

Petitioner contends that expungement of the challenged 2011 prison disciplinary violation and the associated thirty-day credit loss will have an effect on his future parole consideration hearings, and therefore, will have an effect on the duration of his confinement. (Opp'n at 8). In his opposition, Petitioner asserts that if his petition is successful, the removal of the disciplinary finding at issue will increase the likelihood that the parole board will find Petitioner suitable for parole at his next hearing. (Opp'n at 6). Petitioner points out the parole board's comments during his 2007, 2011, and 2012 parole board hearings that Petitioner should remain discipline-free. (Id.). Petitioner argues that the parole board stressed the importance of having the challenged disciplinary violation expunged and remaining discipline free during Petitioner's October 2011 parole boarding hearing. (Id.). Respondent argues that the parole board is not required to deny parole based on the existence of a disciplinary report, so the possibility that the expunged disciplinary decision might alter a future parole board suitability decision for Petitioner is too attenuated. (Motion to Dismiss at 4-5).

Upon review of the pleadings as well as the transcripts of the 2007, 2011, and 2012 parole board hearings, this Court concludes that expungement of Petitioner's challenged 2011 disciplinary violation is likely to have an effect on Petitioner's future parole suitability hearings, and therefore, could affect the duration of his confinement. See Bostic, 884 F.2d at 1269; Docken, 393 F.3d at 1030. During Petitioner's 2007 parole board hearing, which was prior to the challenged disciplinary violation, the board stated, "[i]t's important that he continue to be

6

1 disciplinary-free." (Opp'n, Ex. A). During Petitioner's 2011 parole board hearing, the commissioner specifically referenced the challenged disciplinary violation when he stated, "[w]e think with a 115, it doesn't look very positively as far as your hearing goes. And if you can get that thing removed, it would probably put you in a better light anyway, and you will be looked at more favorably…" (Opp'n, Ex. B). At Petitioner's most recent parole board hearing in 2012, after Petitioner stipulated to a three year period of unsuitability, the board stated, "do remain disciplinary-free." (Opp'n, Ex. C). Therefore, the parole board made it clear that expungement of the challenged disciplinary violation would result in a more favorable hearing for Petitioner, and therefore, the challenged disciplinary violation is likely to affect the duration of his confinement. (Opp'n, Ex. B). In addition, the comments by the parole board at the 2007 and 2012 hearings demonstrate that the parole board feels it is important for Petitioner to remain discipline-free. (See Opp'n, Exs. A, C).

Even though Petitioner's MEPD has passed, the record demonstrates that the challenged disciplinary conviction could have an impact on Petitioner's future parole suitability determinations. On the facts of this case, the Court finds that the nexus between the challenged disciplinary violation and Petitioner's suitability for parole is not speculative. See Docken, 393 F.3d at 1030. Therefore, Petitioner's claims are likely to affect the duration of his confinement. Id. Thus, habeas jurisdiction is appropriate, and Respondent's motion to dismiss should be denied.

**C.  Merits of Petitioner's Claims**

The Court will now address the merits of Petitioner's claims. Petitioner argues that his due process rights were violated, because he didn't receive advance notice of the disobeying a direct order charge and he was not afforded a hearing on this charge. Petitioner also argues that there is insufficient evidence to find him guilty of disobeying a direct order.

The law concerning a prisoner's Fourteenth Amendment liberty interest in good time credit is set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). While the United States Constitution does not guarantee good time credit, an inmate has a liberty interest in good time credit when a state statute provides such a right and delineates that it is not

to be taken away except for serious misconduct. See id. at 557 ("It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior."); id. ("[T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance ...."); id. at 558 (holding that "[s]ince prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed").

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff, 418 U.S. at 539. Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic, 884 F.2d at 1269 (citing Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454–455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1984)).

When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. See Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563–67.

Petitioner maintains that his due process rights were violated because the notice he received charged him with Manipulation of Staff, not Disobeying a Direct Order. A prisoner is entitled to advance notice so that he is informed of the charges and "to enable him to marshal the facts and prepare a defense." Wolf, 418 U.S. at 564. Here, the notice Petitioner received seven days before the disciplinary hearing described in detail the incident for which he faced disciplinary charges, and provided the date, time, and place of the incident. The fact that the

appeals examiner modified the charge to Disobeying a Direct Order during the appeal process does not render the notice inadequate, particularly where, as here, the factual basis for both offenses was the same. See Bostic, 884 F.2d at 1270–71 (although incident report accused inmate of "stealing" when he was ultimately disciplined for possession of contraband, due process was satisfied because the incident report "described the factual situation that was the basis for the finding of guilt of possession of contraband and alerted Bostic that he would be charged with possessing something he did not own"); Zimmerlee v. Keeney, 831 F.2d at 188 (9th Cir. 1987) (notice of charges was sufficient when prisoner was provided information "to marshal facts to prepare his defense and to clarify the charges). The incident report made Petitioner aware of the factual basis underlying the charges against him; to wit, that he was told by a staff member that the documents would not be placed in his file, and then he told another staff member to place the documents in his file. The facts in the incident report were sufficient to apprise Petitioner that he could be subject to a charge of disobeying a direct order. Further, the incident report contained all of the facts necessary to enable Petitioner "to marshal the facts and prepare a defense," which he indeed did. Wolff, 418 U.S. at 564. Indeed, on every occasion throughout the disciplinary process, Petitioner denied the charge against him and defended his actions by explaining that he had the right to place documents in his file. Whether Petitioner's acts constituted "manipulating staff" or "disobeying a direct order," he fails to explain how his defense could possibly have been different. Accordingly, Petitioner was provided with advance notice of the charges.

Petitioner also argues that prison officials did not afford him a full disciplinary hearing in adjudicating the Disobeying a Direct Order charge. Pursuant to California Code of Regulations 15 § 3312, the Chief Disciplinary Officer of California Substance Abuse and Treatment Facility could have found Petitioner guilty of disobeying a direct order. Petitioner points to no authority to support his claim that a new hearing must be conducted before a prisoner is found guilty of a different serious rule violation when the offense was "included" within the original offense charged. In fact, pursuant to California Code of Regulations 15 § 3315(f)(3), the senior hearing officer could have found Petitioner guilty of a different serious rule violation, so long as the

offense was "included" within the original offense. It is illogical that a senior hearing officer could make a modification to the charge at the conclusion of a hearing, but not an appeals examiner. Therefore, it was permissible for the appeals examiner to make the modification, as the new offense was "included" within the original offense charged.

In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455 (citing United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560 (1927)). In Hill, the United States Supreme Court explained that the "some evidence" standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced ..." Id. "Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Hill, 472 U.S. at 456. Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455–456. The Court justified this lesser standard as follows:

> We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require the courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Id. at 456 (citations omitted.)

"The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Id. at 457. Even where, as in Hill, the evidence in the case "might be characterized as meager," if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," those findings must be upheld. Id. Thus, if the procedures listed above are afforded to an inmate, and "some evidence" supports the hearing officer's decision, the requirements of due

1  process are satisfied.  <u>Hill</u>, 472 U.S. at 455; <u>Bostic v. Carlson</u>, 884 F.2d at 1269–1270.

2       Here, during the Third Level Review, the appeals examiner found that there was not
3  sufficient evidence to support a finding that Petitioner was manipulating staff, but found that
4  there was sufficient evidence to find Petitioner guilty of Disobeying a Direct Order. (Pet., Ex. J
5  at 13).  The evidence presented at the disciplinary hearing that was relied upon by the appeals
6  examiner included the Rule Violation Report written by Correctional Counsel I (CCI) Hernandez
7  on August 16, 2011.  (Pet., Ex. I at 1-2).  According to CCI Hernandez, when she met with
8  Petitioner to have him sign his Board Report for his October 2011 parole hearing, Petitioner told
9  her that he needed to place documents into his central file, and that he had a right to do so.  (Pet.,
10 Ex. I).  CCI Hernandez informed Petitioner that she would not be placing any documents into his
11 Central File.  (<u>Id.</u>).  CCI Hernandez was subsequently informed that CCI A. Cerda and CCIII
12 Hebron had told Petitioner that the documents could not and would not be placed in the Central
13 File, and that he could take the documents to his hearing or make copies at his expense.  (<u>Id.</u>).

14      During the Third Level Review, the hearing officer found petitioner guilty based upon the
15 fact that Petitioner "was told twice that his documents would not be placed in his central file and
16 he still attempted to circumvent those orders when he continued to seek the placement of those
17 documents into his central file."  (Pet., Ex. J).  Petitioner attempted to have another employee
18 place the documents in his central file, even after he was told that the documents could not and
19 would not be placed in his central file.  Moreover, Petitioner's own statement that he Petitioner's
20 claim that he had the right to place the documents in his central file for his parole hearing is
21 without merit.  As stated in the Third Level Review decision, Petitioner did not have the right to
22 place documents in his central file.  CCR 2249 only provides that documents may be placed in a
23 central file, and therefore, it is at the discretion of prison officials what documents are placed in a
24 central file.

25      Accordingly, the "some evidence" standard has been met.  See <u>Hill</u>, 472 U.S. at 455.
26 Accordingly, Petitioner's due process claim lacks merit, and the Court recommends that the
27 petition be denied.

28 ///

## III.

## RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss be DENIED;

2. Petitioner's petition for writ of habeas corpus be DENIED with prejudice; and

3. Clerk of Court be directed to enter judgment and

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 5, 2014**

UNITED STATES MAGISTRATE JUDGE